IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DEBBIE SHERRILL,** | } |
| | } |
| Plaintiff, | } |
| | } |
| v. | }   Case. No.: 2:07-CV-1529-RDP |
| | } |
| **MICHAEL J. ASTRUE,** | } |
| **Commissioner of Social Security,** | } |
| | } |
| Defendant. | } |

### MEMORANDUM OF DECISION

Plaintiff Debbie Sherrill brings this action pursuant to Section 205(g) of the Social Security Act (the "Act") seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying her application for a period of disability, Disability Income Benefits ("DIB") under Title II of the Act, and Supplemental Security Income ("SSI") benefits under Title XVI of the Act. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons outlined below, the court finds that the decision of the Commissioner is due to be affirmed because it is supported by substantial evidence and proper legal standards were applied.

**I.     Procedural History.**

Plaintiff filed her applications for DIB and SSI on October 4, 2004. (Tr. 19, 45-49). Plaintiff's onset date of disability as amended is December 29, 2004. (Tr. 285). Plaintiff's application was denied and she requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 26-27). Plaintiff's case was heard by ALJ Charles L. Brower on July 17, 2006. (Tr. 39, 284-301). In his February 12, 2007 decision, ALJ Brower determined that Plaintiff was not eligible for a period of disability, DIB, or SSI because she did not have an impairment or a combination of

impairments that, singly or in combination with any other impairments, meet or equal a listing in the Listing of Impairments. (Tr. 17). The ALJ further determined that Plaintiff had no physical limitations, and only moderate mental limitations and, thus, was able to perform some of her past relevant work. ("PRW") (Tr. 17). On June 22, 2007, the Appeals Counsel declined Plaintiff's request for a review of the ALJ's decision. (Tr. 4-6). Within the required time limitations, Plaintiff filed her appeal in this court.

## II.     ALJ Decision.

Determination of disability under the Act requires a five-step analysis. *See* 20 C.F.R. § 404.1 *et. seq.* First, the Commissioner determines whether the claimant is working. Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the Regulations. Fourth, the Commissioner determines whether the claimant's residual functional capabilities ("RFC") can meet the physical and mental demands of past work. The claimant's RFC consists of what the claimant can do despite her impairment. Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work. In making a final determination, the Commissioner will use the Medical-Vocational Guidelines in Appendix 2 of Part 404 of the Regulations when all of the claimant's vocational factors and the RFC are the same as the criteria listed in the Appendix. If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will provide no further review of the claim.

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that the "claimant must establish a *prima facie* case by demonstrating that [s]he can no longer perform h[er] former employment." *Freeman v. Schweiker*, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted). Once a claimant shows that she can no longer perform her past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." *Id.*

> [T]he district court must review the agency's decision and determine whether its conclusion, as a whole, was supported by substantial evidence in the record. Substantial evidence is something more than a mere scintilla, but less than a preponderance. If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it. We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]

*Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir.2005) (internal quotations and citations omitted).

Plaintiff was born on February 19, 1959. She is a high school graduate. (Tr. 288). She attended Wallace State Community College in Selma, Alabama for one semester. (Tr. 252). Plaintiff's employment history includes work as a hotel desk clerk, a pharmacy assistant, a sales clerk, and wire tester. (Tr. 62, 79). Plaintiff also served as the main caretaker for her mother who suffered from a brain tumor. (Tr. 133). At the hearing before the ALJ, Plaintiff testified that she was "terribly depressed, I've got problems with my nerves and the anxiety and panic attacks really affect how I am day to day." (Tr. 290). Plaintiff claims that the television talks to her, but that symptom, as well as her panic attacks, are improved when she takes medication. (Tr. 293-94).

In addition to hearing testimony, the ALJ reviewed Plaintiff's medical records. (Tr. 13). Plaintiff was diagnosed with Major Depressive Disorder no later than December 2002. (Tr. 134). She received treatment from the Cahaba Center for Mental Health ("CCMH") for this condition

beginning in 2002, through the time she filed her application for disability benefits in October 2004, and continuing until approximately May 2005. (Tr. 123-70). She was seen by her regular treating Psychiatrist, Dr. Winston Pineda, a month before her application for disability benefits, on September 3, 2004. Dr. Pineda's progress note from that date indicates that Plaintiff "shows no psychopathology." (Tr. 125). Dr. Pineda's progress note on April 6, 2005, after the date Plaintiff's application for benefits was filed, indicates "no psychosis." (Tr. 215).

Plaintiff underwent psychological evaluations by Dr. Richard S. Reynolds in December 2004, and by Dr. Gerald K. Anderson in August 2006. (Tr. 179-81, 251-58). The evaluation by Dr. Anderson reports that some of the results of the psychological testing of Plaintiff may be, if not invalid, at least "artificially inflated." (Tr. 257). The ALJ considered these psychological evaluations and did not find them credible because of their inconsistency with CCMH's treatment records over the three years Plaintiff was treated there. (Tr. 14). These evaluations yielded conclusions about Plaintiff's mental state that differed significantly from the conclusions reached by the physician and therapist from CCMH who treated Plaintiff on an ongoing basis. The treatment progress notes made by Plaintiff's CCMH therapist indicate that she had a discussion with Plaintiff on August 9, 2004 (two months before Plaintiff filed her application for benefits) about Plaintiff's homeless status. In the progress note, the therapist indicates that she told Plaintiff that "all of [their] clients who live in [the mental health center's] apartments or group homes are on disability and have income to pay the monthly required charge." (Tr. 156).

At the hearing, the ALJ called a vocational expert ("VE") to testify. (Tr. 296-300). The VE testified that a person of Plaintiff's age, education, and past relevant work, subject to the residual functional capacity awarded to Plaintiff by the State Agency Psychologist, which was based upon

4

the medical evidence (including CCMH's records), *could* perform at least some of her past relevant work. (Tr. 298-99). The VE also testified that Dr. Pineda's mental status evaluations reflected in his treatment notes regarding Plaintiff indicate that Plaintiff *does not have* a disabling mental health problem. (Tr. 290).

Based upon the evidence before him, the ALJ concluded that Plaintiff suffered from Major Depressive Disorder, moderate. He further concluded that this impairment, alone or in combination with any other impairment, did not meet or equal a listed in the Listing of Impairments. Finally, the ALJ found that Plaintiff was able to perform her PRW as a pharmacy assistant and a wire inspector. (Tr. 18).

### III.   Plaintiff's Argument for Reversal.

Plaintiff seeks to have the ALJ's decision reversed and benefits awarded. (Doc. # 9, at 6). Plaintiff asserts that there are two reasons why this court should grant the relief sought: (1) the ALJ improperly discounted the psychological evaluations conducted by Dr. Reynolds and Dr. Anderson in December 2004 and August 2006, respectively; and (2) the ALJ applied improper legal standards. (Doc. #9, at 1).

### IV.   Standard of Review.

The only issues before this court are whether the record reveals substantial evidence to sustain the ALJ's decision, *see* 42 U.S.C. § 405(g); *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982), and whether the correct legal standards were applied. *See Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988); *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Title 42, U.S.C., §§ 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court

may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence. *See id.* (citing *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence; "[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. *See Martin*, 894 F.2d at 1529. While the court acknowledges that judicial review of the ALJ's findings is limited in scope, the court also notes that review "does not yield automatic affirmance." *Lamb*, 847 F.2d at 701.

**V.    Discussion**.

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for reversal and an award of benefits. For the reasons outlined below, the court finds that the ALJ's decision is supported by substantial evidence and that he applied the proper legal standards.

    **A.    The ALJ's Decision Is Supported By Substantial Evidence.**

Plaintiff argues that the ALJ improperly discounted Dr. Reynolds' and Dr. Anderson's psychological evaluations of Plaintiff. Plaintiff argues that if the ALJ had given proper credit to these evaluations, he would have awarded Plaintiff benefits. (Doc. #9, at 6). Plaintiff appears to argue that the ALJ merely relied upon an evaluation performed by a State Agency consultant, Dr. Koelter, who never evaluated Plaintiff in person. Without question, the ALJ relied on Dr. Koelter's

opinion. However, the ALJ also considered Plaintiff's extensive medical records from CCMH, where she was treated for a period of three years. In making his determination, the ALJ found that Dr. Koelter's conclusions were consistent with Plaintiff's treatment records, while Dr. Reynolds' and Dr. Anderson's conclusions were not. (Tr. 16).

"The ALJ considers many factors when weighing medical opinions, including the examining relationship, the treatment relationship, how supported an opinion is, whether an opinion is consistent with the record, and a doctor's specialization." *See* 20 C.F.R. § 404.1527(d)(1)-(6); *Davis v. Astrue*, 2008 WL 2673876 * 5 (11th Cir. 2008). "When the ALJ does not give the treating source's opinion controlling weight, the ALJ applies other factors such as the length of treatment, the frequency of examination, the nature and extent of the relationship, as well as the supportability of the opinion, its consistency with other evidence, and the specialization of the physician." *See* 20 C.F.R. § 404.1527(d)(2)-(6); *Davis*, 2008 WL 2673876 at * 5. The record does not reflect that either Dr. Reynolds or Dr. Anderson had ongoing treating relationships with Plaintiff. Nor did Dr. Koelter. However, Dr. Koelter's opinions are consistent with and supported by the records from CCMH, the one entity that did have a long-term treating relationship with Plaintiff. Therefore, the court finds the ALJ's decision was supported by substantial evidence.

### B.     The ALJ Applied the Proper Legal Standards.

Plaintiff's brief is primarily dedicated to arguing that the ALJ improperly weighed the evidence in this case by relying upon the Dr. Koelter's opinions rather than those of Dr. Reynolds and Dr. Anderson. (Doc. #9, at 6-8). Her argument that the ALJ applied the incorrect legal standards is off the mark.

The ALJ's decision reveals that he properly applied the five step analysis for determining whether Plaintiff suffered from a disability under the Act. (Tr. 11-18). *See* 20 C.F.R. § 404.1 *et. seq.* Again, Plaintiff's argument challenges the ALJ's determination that Dr. Reynolds' and Dr. Anderson's reports were not creditable because they conflicted with Plaintiff's treatment records. "In Social Security disability benefits cases, generally, the opinions of examining physicians are given more weight than non-examining physicians, treating physicians are given more weight than non-treating physicians, and specialists are given more weight on issues within their areas of expertise than non-specialists." *See* 20 C.F.R. § 404.1527(d)(1), (2), (5); *Davis*, 2008 WL 2673876 at * 5. The ALJ properly applied the relevant legal standards in determining which set of conflicting medical evidence should be credited. He gave greater weight to treating physicians than to examining physicians. He gave greater weight to the opinions which, although they were from a source who did not examine Plaintiff, were consistent with her records from the facility with which she had a long-term treating relationship. In doing so, the ALJ did not err in concluding that Dr. Pineda's opinions are entitled to more weight than those of Dr. Reynolds or Dr. Anderson. *Davis*, 2008 WL 2673876 at * 5. Dr. Koelter may not have been an examining physician, but her conclusions were consistent with Dr. Pineda's. Furthermore, the ALJ gave proper credit to the records from CCMH based upon relevant, specified factors: the length of treatment, the frequency of examination, and the nature and extent of the relationship. *Davis*, 2008 WL 2673876 at * 5. Therefore, the court concludes that the ALJ applied the proper legal standards in his decision.

## VI.   Conclusion

For the reasons stated above, the court determines that the ALJ's finding that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching

this determination. The Commissioner's final decision is due to be affirmed and a separate order in accordance with this memorandum of decision will be entered.

      **DONE** and **ORDERED** this    9th    day of September, 2008.

                                              R. DAVID PROCTOR
                                              UNITED STATES DISTRICT JUDGE